[Civ. No. 604.    Third Appellate District.—September 16, 1909.]

WRIGHT & KIMBROUGH, a Corporation, Appellant, v. J. CLARENCE CARLY et al., Respondents.

TRUST—CONTRACT BETWEEN DISTRIBUTEES—GUARDIAN OF MINOR MADE TRUSTEE—REPORTS—PAYMENTS—EXPIRATION OF TERM—MOOT QUESTION.—Where, by the terms of a trust agreement made before distribution, the guardian of a minor is made trustee of the whole estate, during his minority, with duty to make annual reports to the court and monthly reports to the beneficiaries, and to pay each of them a stated sum monthly, and to distribute all surplus rents annually, after deduction of necessary expenses besides six per cent on all sums collected allowed to the trustees, the trust to terminate when the minor becomes of age, or dies prior thereto, if it appears that he has become of age, the construction of the trust agreement, as to its nature, effect, or validity, has become a merely abstract or moot question, which will not be passed upon.

ID.—TRANSFER BY ADULT BENEFICIARIES DURING TRUST—RIGHTS OF SUCCESSOR.—The adult beneficiaries had the clear right to transfer all their beneficial interests during the trust, and their successor became thereby vested with all of their rights under the trust agreement, to the payments thereby required to be made, independently of the question whether the adult trustees or their successor had or had not the right to terminate the trust agreement at any time and collect the whole share of rents pertaining to their interests.

ID.—DEMAND OF RIGHT TO RENTS—REFUSAL—COLLECTION BY TRUSTEE WITHOUT ACCOUNTING—RIGHT OF ACTION BY SUCCESSOR.—Where the successor made demand of the right to collect the share of the rents pertaining to the rights assigned, which demand was refused, and the trustee proceeded to collect all of the rents as before and

retained the same without any payments to the successor under the terms of the agreement, or any accounting thereunder, the successor is entitled at least to sue for an accounting.

ID.—SUFFICIENCY OF COMPLAINT—SINGLE CAUSE OF ACTION—DEMURRER IMPROPERLY SUSTAINED.—Where the complaint by the successor of the adult claimants states a single cause of action for the withholding of rents to which he was entitled without his authority or consent, and shows no ground of special demurrer, the court improperly sustained a demurrer thereto.

ID.—RIGHT TO RELIEF.—The court may grant any relief, and as many kinds of relief, as are consistent with the cause of action stated, and it cannot be objected to the complaint that such kinds of relief·are asked for.

APPEAL from a judgment of the Superior Court of Sacramento County.   C. N. Post, Judge.

The facts are stated in the opinion of the court.

J. O. Prewett, and Eugene Aram, for Appellant.

W. F. Renfro, and White, Miller & McLaughlin, for J. Clarence Carly and Harrison Tate, Respondents.

Chauncey H. Dunn, for Walter R. Sherman and Amy Zella Sherman, Respondents.

HART, J.—The court below sustained the demurrer of the defendants, Carly and Tate, to the first amended complaint, and the plaintiff having declined to amend, judgment was entered in favor of said defendants.

This appeal is by plaintiff from said judgment.

The facts which occasion this action are fully set out in the complaint and in a certain agreement between the defendants which is made a part of said complaint, and are in substance as follows:

On the eighth day of December, 1905, the superior court in and for the county of Sacramento, made and caused to be entered a decree distributing certain real property situated in the city of Sacramento, and described in the complaint, to Mrs. Minnie Zoe Crawford, Mrs. Amy Zella Sherman and Harrison Tate, as the sole heirs and devisees of one J. D. Tate, deceased.

The defendant, Harrison Tate, at the time of the entry of said decree of distribution, was a minor, aged about seventeen years, and the defendant, J. Clarence Carly, was "the duly appointed, qualified and acting guardian of the estate of said minor."

On the eighth day of October, 1905, an agreement was entered into between the said Crawford and Sherman, as parties of the first part, and said Carly, for said minor, as party of the second part, by the terms of which the estate of said J. D. Tate, deceased, was directed to be distributed to the devisees in the manner already stated, and said J. Clarence Carly named "as trustee, to hold, manage and control, for the use and benefit of the said parties of the first part herein, their respective interests in said estate until the said minor shall have attained the age of twenty-one years, which will occur on the 25th day of August, 1909; or, should said minor die before he attain the age of twenty-one years, then until such time as he would have attained the age of twenty-one years, had he lived, at which time this trust, herein created, shall absolutely terminate; provided, however, that, if all the devisees mentioned in said last will and testament should die before said minor would have attained the age of twenty-one years, then said trust shall terminate." It is further provided by said agreement that "it shall be the duty of the party of the second part" to collect all the rents and profits of said estate, make necessary repairs and improvements upon the property, pay all taxes and insurance on said property, and to "make and return an annual account to the Superior Court of the County of Sacramento, of all receipts and disbursements made by him during each and every year during his term of office."

"Said trustee" is required, by the terms of the writing, to "furnish a monthly statement showing the receipts and disbursements of moneys collected by him during his term, as such trustee, to the said Mrs. Crawford and Mrs. Sherman, or to their attorneys," and to "pay over to each of the three heirs and devisees, herein named, the sum of one hundred dollars per month during his said term of office," if the net receipts justify such payments. If any moneys remain in his hands at the end of any year in excess of those required to meet necessary expenses and other stipulated expenditures,

then "said trustee shall divide said surplus at the expiration of such year among the three devisees equally."

The compensation which the agreement stipulates that Carly "shall receive for his services in managing the property is six per cent of all moneys collected by him as such trustee."

The complaint alleges that, on the eighth day of August, 1907, the defendants, Crawford and Sherman, "granted and conveyed to said plaintiff, by good and sufficient deeds, among other property, all of the hereinabove described real estate, together with the rents, issues and profits thereof," said deeds having been subsequently recorded in the office of the county recorder of Sacramento county. The complaint further alleges that the defendants, Crawford and Sherman, on the tenth day of August, 1907, notified said Carly that they had conveyed said real estate, together with the rents, issues and profits thereof, to plaintiff, and at the same time notified said Carly "that they and each of them, revoked his right and authority to collect the rents and profits of said real estate and to manage the same, or to further act for them as agent of said real estate, and that his employment as agent to collect said rents, issues and profits and to manage said real estate was revoked, annulled and made void."

It is alleged that on the same day the plaintiff served upon Carly a notice of similar import, and, further, "not to collect the said rents to which it was entitled, or any portion thereof, or to assume any charge or control over said property of said plaintiff, or to attempt in any manner to manage or control said real estate so owned by said plaintiff, and to refrain and cease collecting the rents thereof, or in any manner attempting or assuming any supervision over the same, with which demand said defendant, J. Clarence Carly, then and there refused and ever since has and still does refuse to comply, and the said defendant, J. Clarence Carly, still claims the right to manage and control said real estate, and to collect the rents thereof, and still continues to do so, adversely and contrary to the rights of plaintiff."

It is alleged that the plaintiff "is now and has been ever since the 8th day of August, 1907, the sole owner in fee and seized of all of said hereinbefore described real property, together with the rents, issues and profits thereof"; that said Carly has no interest "in relation to said real property," ex-

cept the compensation stipulated in the agreement between the parties for collecting the rents and managing the property, and that he "has no right, title, estate, lien, claim or interest whatever, in law or equity, in or to said premises . . . or any portion thereof, and that his claim for commissions under said agreement for collecting the said rents and managing said real estate is not coupled with any interest in said real estate, or any portion thereof."

Plaintiff avers that, since it became the owner of the property described in the complaint, it has attempted without success to collect the rents, etc., accruing therefrom, the tenants of said property basing their refusal to pay over the same to plaintiff on the ground that said Carly claims to be entitled to collect said rents, etc., under and by virtue of the terms of the agreement referred to; that since said eighth day of August, 1907, Carly has collected a large amount of the rents, issues and profits of said real estate, and that plaintiff has not received any part or portion thereof; that plaintiff has demanded of Carly that he pay to it all of the rents and profits belonging to it, so collected by said Carly, and that he cease collecting said rents and profits, but that Carly has failed and refused, and still continues to fail and refuse to comply with said demand, and has refused to pay said rents to said plaintiff, or to account therefor, and still retains said rents belonging to said plaintiff, as aforesaid, in his possession."

Plaintiff charges that Carly is still attempting to collect said rents and to manage said real estate, and that "it has never authorized said Carly to collect said rents or in any manner whatever manage or control said premises."

Plaintiff further declares "that it is willing and able to pay to the said defendant, Carly, any and all sums of money, either for services, disbursements, or other purposes to which he may be legally entitled, and it further offers to pay to him any and all sums of money to which the court may decree that he may be legally entitled."

The prayer of the complaint is for a decree: That no trust was created under and by virtue of the written agreement between the defendants; that the right of said Carly, under the terms of said agreement, to manage and control the property described in the complaint and to collect the rents, issues and profits thereof, "has been terminated and extinguished"; that

said agreement has been terminated and "that the object for which it was made has been entirely fulfilled and accomplished, and that said defendant, Carly, be restrained and enjoined from further collecting said rents or attempting to manage said property or otherwise interfering with the rights of said plaintiff in connection with said real estate"; that the said Carly render an account of said rents collected by him in pursuance of said agreement, and that he account and pay over to said plaintiff all the rents of said premises collected by him since the eighth day of August, 1907; that "the said defendants and each of them be enjoined and restrained from claiming any interest in said premises by virtue of the said agreement hereto attached, or in any manner acting, or proceeding to do anything whatsoever in relation to said real estate, under and by virtue of said agreement," etc.

From the agreement between the parties which, as seen, is made a part of the complaint, it appears that the defendant, Harrison Tate, reached his majority on the 25th of August, 1909, and that, therefore, the life of the agreement having then expired by virtue of its own terms, and no longer exists, the question as to the nature and effect of said agreement—whether there was established thereby a valid trust relating to the real property therein mentioned or a mere agency in Carly to manage the same and collect the rents, etc.—has become purely abstract and moot and hence a construction by this court of the instrument unnecessary. (*Bradley* v. *Voorsanger*, 143 Cal. 214, [76 Pac. 1031], and cases therein cited.)

The demurrer is both general and special.

The special demurrer objects to the complaint on a number of different grounds which may be summarized as follows: That the court is without jurisdiction of the subject of the action or of the persons of the defendants; that several causes of action have been improperly united; that several causes of action are set out but not separately stated; that plaintiff is without legal capacity to sue in this action; that the complaint is uncertain, ambiguous and unintelligible in certain particulars specifically pointed out by the demurrer.

The complaint, in our opinion, states a cause of action and only one, and is, therefore, invulnerable as against the gen-

eral demurrer.   It follows, of course, that, if but one cause
of action is set out in the complaint, the pleading cannot be
obnoxious to the objection of the special demurrer that sev-
eral causes of action are improperly united and that several
causes of action are pleaded without being separately stated.
Nor is the complaint open to the criticism that its averments
are ambiguous, or uncertain or unintelligible.   Neither do we
perceive any reason upon which there may be founded the
contention that the court is without jurisdiction of the sub-
ject of the action or of the persons of the defendants or that
plaintiff is without capacity to sue.

The pleading, by its averments, very clearly, we think, de-
clares that the plaintiff became the purchaser of the real es-
tate involved—the undivided one-third interest each of two
of the three devisees named in the will of J. D. Tate, de-
ceased—and that Carly, having been appointed by said dev-
isees an agent or trustee to manage said property and collect
the rents accruing therefrom for a certain stipulated period,
which had not expired at the time of the conveyance to plain-
tiff, claimed the right to exercise the full power vested in
him by the agreement creating the agency or trust after
plaintiff became the owner of the property; that plaintiff
seeks to have the instrument investing Carly with such power
over the property revoked and the so-called trust terminated;
that it is entitled to an accounting of the moneys received by
Carly as rents and issues flowing from the property after its
transfer to plaintiff and asks that said Carly be enjoined from
further exercising any power, management or control over
said property described in the complaint.   It is at once to be
observed, from these averments, that the plaintiff complains
of the invasion or violation by one of the demurring defend-
ants of one primary right only—to wit: That Carley con-
tinues to manage and control and retain the rents and profits
of property of which the plaintiff is the owner without its au-
thority and consequently without right.   Therefore, but one
cause of action is stated.   It is true that plaintiff, in the state-
ment of said cause of action, sets out facts from which it
would be entitled to several different kinds of relief; but, ob-
viously, this cannot be made the ground of an objection to
a pleading the averments of which, as here, justify the grant-
ing of any one or all the several kinds of relief asked for.

Indeed, the central purpose of the reformed procedure is to authorize the awarding in one action of any kind of relief to which a party may be entitled under the facts pleaded and characterizing the transaction out of which the action has grown, and thus avoid running afoul of that other rule against a multiplicity of suits involving the same cause of action.

Assuming, but by no means conceding, that the effect of the instrument of agreement between the defendants was to establish a valid trust which could not be revoked or terminated except by virtue of its own terms, or until its objects had been entirely accomplished, we do not think that counsel for the respondents would for a moment undertake to deny the right of Crawford and Sherman to sell and convey their interests in the real estate which is the subject of such trust. This proposition is so manifestly true that authorities need not be cited in its support. Nor will the proposition be disputed that the party to whom their interests in said property have been transferred is, upon such transfer, immediately subrogated to all the rights to which the grantees or *cestuis que trust* were entitled under the terms and provisions of the trust. Therefore, when the plaintiff became the owner by purchase of so much of the real estate to which the so-called trust relates as was owned by two of the beneficiaries under the trust, it was entitled, from the time of the transfer, to receive the proportion of the rents, issues and profits accruing from the property to which the grantors would have been entitled had they retained the interests in the trust property which they sold and conveyed to the plaintiff. Carly having refused to turn over the rents to plaintiff, the latter is, therefore, entitled to an accounting of all the moneys received by said Carly from the property which it purchased from Crawford and Sherman, and we think the complaint clearly discloses by its averments that plaintiff is at least entitled to relief to that extent.

The complaint, as we have seen, alleges that the plaintiff as well as its grantors notified Carly of the transfer; that the plaintiff thereafter demanded of Carly the rents collected by him from tenants of the property of which it had become the owner, and demanded of Carly that he render to it an account of all the rents and profits which he had collected

and received from said property; that Carly refused either to pay over to plaintiff any of the moneys collected by him as rents, or to render a statement or an account of the moneys so received by him. Under the terms of the agreement—Carly's sole authority for collecting the rents—it was his duty to pay over to each of the parties of the first part thereto a certain specified sum of money each month, and this, the complaint alleges, he failed and refused to do, so far as plaintiff, the successor in interest to Crawford and Sherman, was concerned. We entertain no doubt that the facts pleaded in the complaint state a good cause of action for at least an accounting, even if it be assumed that the other reliefs demanded could not be awarded under the allegations of the complaint, and that the order sustaining the demurrer was erroneous.

The judgment is reversed.

Chipman, P. J., and Burnett, J., concurred.