Filed 6/4/25  Graham v. Moore CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FRANCES GRAHAM, | |
| Plaintiff and Appellant, | G064124 |
| v. | (Super. Ct. No. CVRI2105673) |
| LARRY MOORE et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Riverside County, Irma Poole Asberry, Judge. Affirmed.

Law Offices of Lawrence R. Bynum and Lawrence R. Bynum; Adolfo Mediano, Jr. for Plaintiff and Appellant.

Jeanne Collachia; Weissman & Weissman and Robert A. Weissman for Defendants and Respondents.

Plaintiff Frances Graham appeals following the trial court's grant of a motion for summary judgment in favor of defendants Larry and Trinidad Moore (collectively, the Moores).[1] The Moores argued Graham's claims, including a claim seeking to quiet title to certain real property, were all time-barred. The trial court granted the motion on that basis. Graham argues the three-year statute of limitations on her quiet title claim never began to run because she was always in possession of the subject property. (See *Muktarian v. Barmby* (1965) 63 Cal.2d 558 (*Muktarian*).)

We affirm. The undisputed evidence shows Graham's possession of the property in question was *disturbed* no later than November 2016. (See *Mayer v. L&B Real Estate* (2008) 43 Cal.4th 1231, 1237 (*Mayer*) ["whether a statute of limitations bars an action to quiet title may turn on whether the plaintiff is in undisturbed possession of the land"].) By that time, Graham conveyed all ownership interest in the property to Trinidad in exchange for the Moores' agreement to make substantial repairs to the property at their expense and allow Graham to live at the property until her death, the Moores paid all taxes on the property, the deed of trust transferring the property to Trinidad was recorded, and the parties' negotiations to reach an agreement to reconvey the property back to Graham failed. Consequently, Graham's 2021 quiet title action was time-barred.

UNDISPUTED FACTS

Graham owned a single-family home in Banning, California (the property). In 2014, the property was in a state of "severe disrepair"; the ceilings in several rooms were caving in and the roof needed to be replaced.

---

[1] We refer to Larry and Trinidad Moore individually by their first names for clarity; we intend no disrespect.

2

Graham reached out to Larry, her late former husband's nephew and a licensed contractor. Larry and his wife Trinidad met with Graham at the property. Graham asked the Moores for help in repairing the property. The Moores agreed to make the needed repairs but told Graham she would have to pay for the repairs. Graham could not afford to repair the property; she had no income other than social security and could not afford or qualify for a loan.

"Graham asked the Moores for suggestions as to how the repairs could be made." After making multiple suggestions, which included taking out a loan or a reverse mortgage, Graham proposed if the Moores repair the property, pay the property taxes, and allow Graham to continue to live at the property until her death, she would transfer the property's title to Trinidad. After many visits to the property and discussions with Graham, on November 1, 2014, the Moores agreed to Graham's proposal.

The Moores made substantial repairs to the property at their own expense; they hired contractors and paid for all labor and materials. The repairs were completed in June 2015. The Moores also assumed paying the property taxes on the property.

On November 23, 2015, Graham signed an unrestricted grant deed transferring the property to Trinidad which was later recorded in May 2016. Trinidad has been the title owner of the property since November 23, 2015.

In November 2016, the Moores discussed reconveying the property to Graham in exchange for her repayment for the cost of repairs and reimbursement for the taxes they paid on the property. The parties did not reach an agreement regarding the amount Graham would repay the Moores for the cost of repairs they incurred or reimburse them for property taxes

3

they paid, and Graham did not make any payments to the Moores. Consequently, the property was not transferred back to Graham.

In September 2019, Graham filed a complaint with the Contractors State License Board in which she sought rescission of her agreement with the Moores. Graham's complaint was later dismissed; she never refiled a complaint with the board.

Pursuant to the parties' agreement, Graham continues to reside at the property.

PROCEDURAL HISTORY

I.

THE FIRST AMENDED COMPLAINT

Graham initiated this action in December 2021. The operative pleading is Graham's first amended complaint, filed in December 2022. In the first amended complaint, Graham asserted claims against the Moores for breach of contract, fraud, recission, financial elder abuse, promissory estoppel, quiet title, and declaratory relief.[2]

In support of her quiet title claim, Graham alleged she has been in physical possession of the property since August 1, 1986, and her possession has "always been exclusive from all others and has never been disputed by others." She alleged the Moores "claim an interest adverse to [Graham's] in the property by transfer of deed on November 23, 2015," which transfer of title she contends the Moores accomplished through fraud or wrongful or illegal conduct. She alleged she sought to quiet title to the

_____

[2] Graham was 86 years old at the time the first amended complaint was filed.

4

property "against all adverse claims of all claimants, known and unknown, as of November 23, 2015[,] when title was wrongfully acquired by [the Moores]."

## II.

### THE MOTION FOR SUMMARY JUDGMENT

The Moores filed a motion for summary judgment or, alternatively, for summary adjudication as to each cause of action of the first amended complaint. The Moores argued Graham's claims seeking recission of the parties' agreement on the basis of fraud, illegality of contract, and unconscionability and claims for financial elder abuse, promissory estoppel, and quiet title were barred by the applicable statutes of limitations. They further argued Graham's cause of action for declaratory relief, consequently, was barred because there was "no remaining 'actual controversy.'"

Graham did not file a timely opposition to the motion. Instead, six days before the noticed hearing date on the motion, Graham filed an ex parte application to continue the hearing on the motion. The Moores filed an opposition to the ex parte application on the ground it was untimely under section 437(c), subdivision (h) of the Code of Civil Procedure. The court denied the ex parte application to continue the hearing on the motion because it was without cause and was itself untimely filed.

The day before the hearing on the motion for summary judgment, Graham filed a memorandum of points and authorities in opposition to the motion. The memorandum stated Graham intended to present her points and authorities orally at the hearing.

5

## III.

### AT THE HEARING, THE TRIAL COURT REJECTS GRAHAM'S UNTIMELY OPPOSITION AND GRANTS THE MOTION FOR SUMMARY JUDGMENT

After allowing Graham's counsel to present argument at the hearing on the motion, the trial court concluded counsel failed to state good cause for the late filing of the opposition to the motion or good cause why the late filed opposition should be considered.[3] The trial court granted the motion for summary judgment, concluding "[u]nder the evidence provided, [Graham] did not comply with the statute of limitations in filing the instant claim."

As to Graham's claim for quiet title at issue in this appeal, the trial court ruled: "Quiet title is the process of determining any adverse claim asserted by a defendant regarding real property. [Citations.] The court is to determine, between the parties, all conflicting interest in the property and decree the interest. [Citation.] Quiet title has no statute of limitations; rather, it is governed by the underlying theory of relief. [Citation.] The essence of Graham's claim is that the transfer of her property to Trinidad Moore was via fraud. Thus, the applicable statute of limitations is the three-year statute for fraud. [Citation.] As discussed above, the claim was not brought within the applicable statute of limitations. The motion is granted."

---

[3] Graham does not challenge the trial court's ruling Graham failed to show good cause for filing a late opposition.

The trial court denied Graham's later filed motion for reconsideration. Judgment was entered in favor of the Moores and against Graham. Graham appealed.[4]

## DISCUSSION

### I.

#### GOVERNING LEGAL STANDARDS AND STANDARD OF REVIEW

"[I]n moving for summary judgment, a 'defendant . . . has met' his 'burden of showing that a cause of action has no merit if' he 'has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials' of his 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.'" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.)

Where a defendant seeks summary adjudication or summary judgment based on the defense the action is barred by the statute of limitations, "'[t]he defendant has the initial burden . . . to show that undisputed facts establish [this] affirmative defense. [Citation.] Once the defendant meets that burden, the burden shifts to the plaintiff to show a triable issue of material fact regarding the defense. [Citation.] . . . Although

---

[4] Graham prematurely filed her notice of appeal before judgment was entered. Instead of dismissing this appeal, pursuant to rule 8.104(d)(2) of the California Rules of Court, we construe the notice of appeal as having been filed immediately after entry of the judgment.

application of the statute of limitations is normally a question of fact, the question becomes one of law when the evidence is susceptible of only one reasonable conclusion.'" (*Vera v. REL-BC, LLC* (2021) 66 Cal.App.5th 57, 64.)

"'On review of an order granting or denying summary judgment, we examine the facts presented to the trial court and determine their effect as a matter of law.' [Citation.] We review the entire record, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' [Citations.] [¶] Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

## II.

### GRAHAM'S QUIET TITLE CLAIM IS TIME-BARRED

Graham's only argument on appeal is the trial court erred by concluding her quiet title claim is time-barred. She argues the statute of limitations on that claim never began to run because she has always remained in possession of the property. For the reasons we explain, Graham's argument is without merit.

"[T]here is no statute of limitations that generally governs all actions to quiet title. [Citation.] Instead, courts look to the underlying theory of relief to determine the applicable period of limitations. [Citation.] An inquiry into the underlying theory requires the court to identify the nature (i.e., the 'gravamen') of the cause of action. [Citation.] We look to the nature of the right asserted, not the form of action or relief sought." (*Huang v. Wells Fargo Bank, N.A.* (2020) 48 Cal.App.5th 431, 437 (*Huang*); see *Kumar v. Ramsey* (2021) 71 Cal.App.5th 1110, 1122 (*Kumar*) ["The limitations period for a quiet title cause of action depends on the underlying theory of relief"].)

8

Here, in support of her quiet title claim, Graham alleged in the first amended complaint that her transfer of the deed to the property to Trinidad on November 23, 2015, was accomplished by way of fraud or wrongful or illegal conduct on the part of the Moores. Graham further alleged she sought to quiet title to the property "against all adverse claims of all claimants, known and known, as of November 23, 2015[,] when title was wrongfully acquired by [the Moores]."

In finding the quiet title claim time-barred, the trial court applied the three-year statute of limitations in Code of Civil Procedure section 338, subdivision (d) for fraud. No party suggests a different statute of limitations should apply to this claim. Instead, Graham argues that no statute of limitations period ever began to run because it is undisputed she has been in continuous possession of the property.

"It long has been the law that whether a statute of limitations bars an action to quiet title may turn on whether the plaintiff is in undisturbed possession of the land." (*Mayer, supra*, 43 Cal.4th at p. 1237; see *Salazar v. Thomas* (2015) 236 Cal.App.4th 467, 477 (*Salazar*) ["quiet title actions have special rules for when the limitations period begins to run"].) "Part of the rationale for this special rule for quiet title actions is an unwillingness to convert a statute of limitations into a statute that works a forfeiture of property rights on the person holding the most obvious and important property right—namely, possession." (*Salazar, supra*, 236 Cal.App.4th at p. 477.) "Even when a party in possession knows there is a potential adverse claim, 'there is no reason to put him to the expense and inconvenience of litigation until such a claim is pressed against him.'"

(*Huang, supra*, 48 Cal.App.5th at p. 438, quoting *Muktarian, supra*, 63 Cal.2d at pp. 560–561.)[5]

"[P]ossession does not provide a plaintiff with an unlimited tolling period without qualification." (*Kumar, supra*, 71 Cal.App.5th at p. 1122.) Instead, "the statute of limitations commences on a quiet title claim when the plaintiff is no longer in '*undisturbed* possession' of the land." (*Id.* at pp. 1122–1123, italics added.)

To determine whether a party's possession of property has been disturbed within the meaning of the special rules for the accrual of quiet title actions, "courts consider the following questions: '(1) when were plaintiffs no longer owners "in exclusive and undisputed possession" of the land [citation]; (2) when was defendants' adverse "claim . . . pressed against" plaintiffs [citation]; or (3) when was defendants' hostile claim "asserted in some manner to jeopardize the superior title" held by plaintiffs [citation].'" (*Kumar, supra*, 71 Cal.App.5th at p. 1123.)

Here, the undisputed evidence establishes Graham knowingly and without restriction transferred complete ownership of the property to Trinidad in November 2015 pursuant to the parties' negotiated agreement whereby the Moores completed substantial repairs of the property at their sole expense. By that time, the Moores had assumed responsibility for paying

---

[5] Forty-four years before *Muktarian*, the Supreme Court explained: "An outstanding adverse claim, which amounts only to a cloud upon the title, is a continuing cause of action, and is not barred by lapse of time, until the hostile claim is asserted in some manner to jeopardize the superior title. So long as the adverse claim lies dormant and inactive the owner of the superior title may not be incommoded by it and has the privilege of allowing it to stand indefinitely. Each day's assertion of such adverse claim gives a renewed cause of action to quiet title until such action is brought." (*Secret Valley Land Co. v. Perry* (1921) 187 Cal. 420, 426–427.)

all property taxes on the property. Graham in turn had stopped paying property taxes after having dutifully paid property taxes for the property throughout the time period she had owned the property. The grant deed reflecting Graham's transfer of all ownership in the property to Trinidad was recorded in May 2016. The undisputed evidence shows Graham did not believe, whether mistakenly or otherwise, she retained *any* ownership interest in the property after she conveyed the property to Trinidad in November 2015, much less shows she actually retained any such interest.

Significantly, the undisputed evidence establishes in 2016, the Moores and Graham attempted to negotiate an agreement whereby Trinidad would reconvey the property back to Graham in exchange for her compensating the Moores for the amount of costs they incurred in repairing the property and reimbursing them for the property taxes they paid on the property. The parties failed to reach an agreement regarding the amount Graham owed the Moores in repair costs and tax payments, and the property was never reconveyed back to Graham.

Although, pursuant to the parties' agreement, Graham has continuously lived at the property, her possession of the property was *disturbed,* within the meaning of the special statute of limitations rules for quiet title actions, no later than in November 2016 when the parties' negotiations failed and the Moores did not reconvey the property back to Graham. Graham's failure to recover title in this instance resulted in Trinidad's adverse claim to the property "'press[ing] against'" or jeopardizing Graham's allegedly superior title to the property so as to commence the running of the statute of limitations. (*Kumar, supra*, 71 Cal.App.5th at p. 1123; see *Mayer, supra*, 43 Cal.4th at p. 1240 [plaintiffs' possession disturbed and statute of limitations on quiet title claim began to run when

11

they were notified by letter from tax collector their property had been sold at public auction for nonpayment of taxes].)

This case is therefore distinguishable from cases in which courts have found "[the] mere notice of an adverse claim is not enough to commence the owner's statute of limitations." (*Salazar, supra*, 236 Cal.App.4th at p. 478; see *id.* at p. 482 [notice of default insufficient to dispute or disturb property owner's possession and trigger statute of limitations]; see also *Mayer, supra*, 43 Cal.4th at p. 1240 [while plaintiff's receipt of notice property had been sold effectively disturbs plaintiff's possession of the property, plaintiff's prior receipt of a defective notice of tax sale was insufficient to disturb possession]; *Muktarian, supra*, 63 Cal.2d at p. 561 [quiet title claim not time-barred even if party in possession knows of a potential adverse claimant as statute of limitations does not begin to run until such a claim is pressed against plaintiff]; *Huang, supra*, 48 Cal.App.5th at p. 440 [notice of trustee's sale followed by postponement of the sale insufficient to disturb possession].)

Consequently, the governing three-year statute of limitations for Graham's quiet title claim expired in November 2019, over two years before she initiated this lawsuit. The trial court therefore correctly determined Graham's quiet title claim was time-barred and granted the motion for summary judgment accordingly.

12

## DISPOSITION

The judgment is affirmed. Respondents to recover costs on appeal.

MOTOIKE, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


SCOTT, J.